IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DONALD MOYER,

        Plaintiff,

v.

NANCY A. BERRYHILL,[1]
Acting Commissioner of the Social Security
Administration,

        Defendant.

CIVIL ACTION
NO. 15-3748

## OPINION

**Slomsky, J.**                                                                                                                                         **October 24, 2018**

### I.    INTRODUCTION

Before the Court are the Objections of Plaintiff Donald Moyer to United States Magistrate Judge Henry S. Perkin's Report and Recommendation. (Doc. No. 15.) On July 6, 2015, Plaintiff initiated this action by filing a Motion for Leave to Proceed in Forma Pauperis. (Doc. No. 1.) On October 2, 2015, Plaintiff filed a Complaint against Defendant Carolyn W. Colvin, the Commissioner of the Social Security Administration, alleging that Defendant wrongfully denied Plaintiff disability insurance benefits ("DIB") under Title II of the Social Security Act, and supplemental security income ("SSI") under Title XVI of the Social Security Act. (Doc. No. 4.) On January 25, 2016, the Court referred the case to Magistrate Judge Perkins for a Report and Recommendation ("R&R"). (Doc. No. 13). On April 11, 2018, Magistrate Judge Perkin issued the R&R (Doc. No. 14), and on April 25, 2018, Plaintiff filed timely

---

[1] Nancy A. Berryhill is the Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Berryhill replaces Carolyn W. Colvin as Defendant in this case.

1

Objections. (Doc. No. 15.) On May 9, 2018, Defendant filed a Response to Plaintiff's Objections. (Doc. No. 17.) After an independent review of the record, and for the reasons that follow, the Court will overrule Plaintiff's Objections and adopt the R&R.

## II.  BACKGROUND

### A. Factual and Procedural Background

Plaintiff Donald Moyer was born on December 21, 1968. (Administrative Record ("R.") at 23.) He has a ninth grade education and previously worked as a filter room operator and a forklift operator. (R. at 23, 36-37.)

On December 10, 2012, Plaintiff filed an application for DIB and SSI, claiming that beginning on August 3, 2011, he became unable to work as a result of depression, nerves, and irritable bowel syndrome. (R. at 14.) His application was denied on January 16, 2013, and Plaintiff thereafter timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). (R. at 14.)

On February 25, 2014, ALJ Lawrence Neary held a video hearing and heard testimony from Plaintiff, who was represented by counsel. (R. at 14.) Additionally, the ALJ heard testimony from Sheryl Bustin, an impartial vocational expert. (R. at 14.) On March 20, 2014, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled under the terms of the Social Security Act. (R. at 11-28.) In so concluding, the ALJ explained that given Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), he was capable of performing work as a laundry laborer, machine feeder, and cleaner/housekeeper. (R. at 23-24.)

Plaintiff filed a request for review, and on June 3, 2015, the Appeals Council denied his request, making the ALJ's decision the final decision of the Commissioner. (R. 1-5.) Plaintiff appealed that decision to this Court. On February 25, 2016, the case was referred to Magistrate Judge Perkins for an R&R. (Doc. No. 13.) As noted above, on April 11, 2018, Magistrate Judge

Perkins issue an R&R recommending that Plaintiff's request for review be denied. (Doc. No. 14.) On April 25, 2018, Plaintiff timely filed the Objections that are now before this Court for consideration. (Doc. No. 15.) Finally, on May 9, 2018, Defendant filed a Response to Plaintiff's Objections to the R&R. (Doc. No. 16.)

### B. Disability Determinations Under the Social Security Act

To prove a "disability," a claimant must demonstrate "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). The claimant has the burden of proving the existence of a disability and can satisfy this burden by showing an inability to return to former work. Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979). If she does so, the burden shifts to the Commissioner to show that, given the claimant's age, education, and work experience, he is able to perform specific jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(f).

When evaluating a disability, the Social Security Administration uses a five-step process, which is followed in a set order:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

Id. § 404.1520(a)(4)(i)–(v).

At the third step, the Social Security Administration determines whether the claimant's medical impairment meets or equals one of the Listings in Appendix I of this subpart. Id. § 404.1520(a)(4)(iii). Listing 12.04 pertains to depressive, bipolar and related disorders. 20 C.F.R. Pt. 404, Subpt. P. App. 1 § 12.00A (2014). Each listing contains a statement describing the disorders and certain criteria that must be met in order for the Administration to find that the claimant is disabled. Id.

Paragraph A lists criteria that are necessary to medically substantiate the presence of an impairment. These include medical symptoms, signs, and laboratory results. Id. Paragraph B lists criteria that are necessary to determine whether impairment-related limitations impact the claimant's ability to perform gainful activity. Id. At the time of the ALJ's decision in this case, the claimant's mental impairment needed to satisfy at least two of the following Paragraph B criteria: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. Id. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within one (1) year, or an average of once every four months. Id.

## III. STANDARD OF REVIEW

When reviewing a final decision of the Commissioner of Social Security, the Court must determine whether the record demonstrates substantial evidence to support the Commissioner's decision. 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla . . . . [and includes] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cherry v. Barnhart, 29 F. App'x 898, 901 (3d Cir. 2002) (quoting Richardson v. Perales, 402 U.S. 389, 407 (1971)). The Commissioner's findings of fact, as long as they are supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g).

Because the Commissioner adopts an ALJ's decision as his findings of fact, the ALJ must set out a specific factual basis for each finding. Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974); see 42 U.S.C. § 405(b)(1). An ALJ must consider, evaluate, and refer to specific medical evidence in the record in his decision. See Reefer v. Barnhart, 326 F.3d 376, 381-82 (3d Cir. 2003). Based on the evidence, an ALJ determines whether a claimant proved a "disability," and the Commissioner adopts this decision as his finding of fact. Even if the record offers evidence that undermines the ALJ's conclusion, the Court will not overrule the decision of the ALJ unless that evidence is substantial. Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate," not "a mere scintilla." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000) (citing Plummer v. Apfel, 186 F.3d 422, 427 (3d. Cir. 1999)). If the ALJ's decision is supported by substantial evidence, the court may not set the decision aside, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

## IV. ANALYSIS

Plaintiff makes four objections to Magistrate Judge Perkins' R&R, which recommends that the Court deny Plaintiff's request for review. (Doc. No. 15.) First, Plaintiff objects to the

Magistrate Judge's finding that the ALJ did not err in finding that Plaintiff's irritable bowel syndrome is a non-severe impairment. (Id. at 1.) Second, Plaintiff objects to the Magistrate Judge's finding that substantial evidence supports the ALJ's finding that Plaintiff's depression does not meet or equal Listing 12.04. (Id. at 2.) Third, Plaintiff objects to the Magistrate Judge's finding that substantial evidence supports the amount of weight the ALJ afforded to the opinion of Dr. Bruno Andracchio. (Id. at 2-3.) Finally, Plaintiff objects to the Magistrate Judge's finding that the substantial evidence supports the ALJ's determination that Plaintiff's disability claim was not credible. (Id. at 3-4.) The Court will address each Objection seriatim.

### 1. The Magistrate Judge Properly Concluded that Substantial Evidence Supports the ALJ's Determination that Plaintiff's Irritable Bowel Syndrome is Non-Severe

First, Plaintiff objects to the Magistrate Judge's finding in the R&R that substantial evidence supports the ALJ's determination that Plaintiff's irritable bowel syndrome is non-severe. (Id. at 1.) Plaintiff's argument lacks merit.

In his first Objection, Plaintiff contends that the ALJ should have used the "slight abnormality" standard to assess the severity of his irritable bowel syndrome. (Id.) As explained in Bailey v. Sullivan, 885 F.2d 52, 56-57 (3d Cir. 1989), "an impairment is not severe if it is only a slight abnormality which has such a minimal effect on the [c]laimant that it would not be expected to interfere with his or her ability to work, irrespective of age, education, or work experience." In the R&R, however, Magistrate Judge Perkins determined that the ALJ's decision was in fact consistent with the "slight abnormality" standard, writing that substantial evidence showed that Plaintiff failed "to demonstrate that his irritable bowel syndrome presented with significant symptoms that would cause more than a minimal limitation on his ability to perform basic work functions." (Doc. No. 14 at 8.) The Court agrees with this determination.

In concluding that Plaintiff's irritable bowel syndrome was non-severe, the ALJ reviewed the relevant treatment records of Dr. Natalie Kunsman, Plaintiff's primary care physician, and Dr. Annpurna Korimilli from Digestive Disease Associates. (R. at 16, 421-26; 458-65.) Consistent with these records, the ALJ found that while Plaintiff has a history of irritable bowel syndrome and urinary incontinence, he produced little evidence of any ongoing symptoms or treatment after August 3, 2011, the onset date of his alleged disability. (R. at 16.)

Plaintiff's medical records show that he underwent a colonoscopy and endoscopy in January 2010. (R. 357-63.) The results of these tests indicated that Plaintiff had normal muscosa in the terminal ileum, normal muscosa in the colon, aptha in the rectum, and what appeared to be adenomatous polyps in the rectum. (R. at 358.) Nevertheless, Dr. Korimilli only recommended that Plaintiff undergo a colonoscopy once every three years. (R. at 358.) Records also show that in February, March, July and September 2011, Plaintiff complained of "intermittent episodes" of irritable bowel syndrome and diarrhea. (R. at 422-24, 458-65.) But following the September 2011 episode, there is no evidence that Plaintiff sought or received any subsequent medical treatment for his irritable bowel syndrome or urinary incontinence.

In April 2013, Plaintiff told an employee at the Family Guidance Center that a new psychotropic medication he had been prescribed had caused a "flare" of his irritable bowel syndrome. (R. at 453.) At the same time, however, he told the employee that the issue was improving the more his body adjusted to the medication. (R. at 453.) Beyond that single report, the record is void of any evidence that would suggest that his irritable bowel syndrome would cause anything more than a minimal limitation on his ability to perform basic work activities. Accordingly, the Court is not persuaded by Plaintiff's argument that the Magistrate erred in

finding substantial evidence supported the ALJ's determination that Plaintiff's irritable bowel syndrome was non-severe. Thus, the Court will overrule Plaintiff's first Objection.

> **2. The Magistrate Judge Properly Concluded that Substantial Evidence Supports the ALJ's Determination that Plaintiff's Depression does not Meet or Equal Listing 12.04**

Second, Plaintiff objects to the Magistrate Judge's finding that substantial evidence supports the ALJ's determination that Plaintiff's depression does not meet or equal Listing 12.04. (Doc. No. 15 at 2.) Again, the Court is unpersuaded.

In his second Objection, Plaintiff claims that he meets or equals Listing 12.04 because Dr. Bruno Andracchio, one of his treating physicians, opined that he has marked limitation in maintaining social functioning and marked limitation maintaining concentration, persistence, and pace." (Id.) Additionally, he claims that the record reveals that he is "socially isolated and only interacts with his parents and brother whom he lives with." (Id.) Plaintiff also cites to his own testimony in which he told the ALJ that, while employed, he sometimes broke down and starts crying at work due to his depression. (Id.)

Listing 12.04 covers depressive, bipolar and other related disorders. 20 C.F.R. Pt. 404, Subpt. P. App. 1 § 12.04 (2014). As noted above, to meet Paragraph B criteria for Listing 12.04, the claimant must establish that mental impairment results in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. Id. A marked limitation means more than moderate but less than extreme. Id.

Despite Plaintiff's assertions, the ALJ found that Plaintiff only had "moderate" difficulties in social functioning. (R. at 17-18.) Specifically, the ALJ concluded the following:

8

> The claimant testified that he has difficulty getting along with others and that he does not visit family or friends. While he has had some difficulty with his brother, he is nonetheless able to live with his brother and his parents and there is no evidence of any legal issues due to difficulty getting along with others. For these reasons and those discussed below, the undersigned finds that the evidence of record supports no more than moderate limitation in this category.

(R. at 17.) The ALJ next noted that Plaintiff only had moderate limitation maintaining concentration, persistence or pace. In relevant part, he found:

> The claimant testified to having difficulty with memory and concentration but stated that he can watch television and movies with some difficulty understanding the plot of movies sometimes. There is some intermittent evidence of deficits of memory and concentration, as discussed in detail above. The undersigned finds that the evidence supports a moderate degree of limitation in this category.

(R. at 17.)

Later in the decision, the ALJ again stressed that Plaintiff's treatment record only supported a finding of moderate limitation in maintaining social function and maintaining concentration, persistence or pace. (R. at 20.) In particular, the ALJ stated that "[s]ince being stabilized on medications, the objective findings have shown consistently normal speech, thought process, memory and cognition, orientation, judgment, and insight." (R. at 20.) Citing to Dr. Daniel Werner's opinion, the ALJ found that Plaintiff had only a "<u>slight limitation</u> in his ability to understand, remember, and carry out short, simple, and detailed instructions, make judgments on simple work-related decisions, and interact appropriately with the public, supervisors, and coworkers." (R. at 22) (emphasis added). Moreover, since the August 3, 2011 onset of his alleged disability, Plaintiff did not seek inpatient treatment, intensive outpatient treatment, or emergency room care for his depression-related symptoms. (R. at 20-21.)

Here, Plaintiff contends that the ALJ should have afforded more weight to Dr. Bruno Andracchio's opinion that he has marked limitation maintaining social functioning and marked limitation maintaining concentration, persistence, and pace. (Doc. No 15 at

9

2.) This argument, however, lacks merit. As the Magistrate Judge noted in the R&R, the ALJ did not give Dr. Andracchio's opinion controlling weight because the opinion was both internally inconsistent and at odds with the objective findings of record. (Doc. No. 14 at 9-15.)

Although Dr. Andracchio submitted that Plaintiff has marked limitation in maintaining social functioning and marked limitation maintaining concentration, persistence, and pace (R. at 481), he also noted that Plaintiff's "abilities would be <u>limited but satisfactory</u>" with regard to several areas, including: (1) working in coordination with others without being unduly distracted; (2) getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; and (3) responding appropriately to changes in a work setting. (R. at 21) (emphasis added). Additionally, Dr. Andracchio's records indicate that Plaintiff had "unimpaired recent and remote memory, and had 'ok' impulse control." (R. at 19.)

Dr. Andracchio's opinion that Plaintiff has marked limitation contradicts the objective findings of record. For one, there is substantial evidence that he maintains normal social functions without marked limitation. Although he reported that he has some difficulties with his brother and that his depression has lessened his desire to socialize with others, he also testified that he does not have any problems interacting with other family members, friends, and neighbors. (R. at 212.) Further, he reported that he is able to see his therapist, go grocery shopping, and attend weekly auctions. (R. at 43, 48, 51.) Additionally, Plaintiff's medical records consistently show that he has normal memory and cognitive abilities. (R. at 428-29, 449, 453, 466, 468, 470, 473, 475.)

Given that Dr. Andracchio's opinion that Plaintiff has marked limitation was both inconsistent with the rest of his testimony and at odds with the record, the ALJ afforded it less weight than other evidence and the opinions of other medical professionals. (R. at 22.) Then, after carefully reviewing the remainder of the evidence, the ALJ concluded that Plaintiff does not meet or equal Listing 12.04 because he suffered only moderate limitation in maintaining social functioning and moderate limitation maintaining concentration, persistence, and pace. (R. at 17.) Based on this determination and an independent review of the record, the Court is persuaded that substantial evidence supports this determination. Consequently, the Court will overrule Plaintiff's second objection.

### 3. The Magistrate Judge Properly Concluded that Substantial Evidence Supports the ALJ's Evaluation of the Opinion Evidence

Third, Plaintiff objects to the Magistrate Judge's finding that substantial evidence supports the ALJ's decision to afford some, but not controlling weight to Dr. Bruno Andracchio's opinion that Plaintiff has marked limitation maintaining social functioning and marked limitation maintaining concentration, persistence and pace. (Doc. No. 15 at 2-3.) This argument is untenable.

In his third Objection, Plaintiff largely repeats the argument asserted in his second Objection. Specifically, he contends that the ALJ erred in affording less weight to Dr. Andracchio's opinion than to the opinions of other medical professionals and other evidence in the record. (Id.) To support his contention that Dr. Andracchio's marked limitation opinion deserved more weight, he again cites testimony that he is socially isolated and that, while employed, he often broke down and cried at work. (Id. at 3.) Again, however, the Court disagrees.

According to Third Circuit precedent, an ALJ may reject a treating physician's opinion where that opinion is not supported by medically acceptable clinical and laboratory diagnostic techniques or where the opinion is inconsistent with other substantial evidence in the record. Fargnoli v. Halter, 247 F.3d 34, 43 (3d Cir. 2001.) Further, Social Security regulations dictate that when an ALJ considers the amount of weight to afford to a treating physician's opinion, the ALJ must consider the consistency of the opinion with the evidence in the record. 20 C.F.R. § 416.927(d)(2). Where there is "conflicting and internally contradictory evidence," the opinion is not necessarily controlling. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991).

As explained above, the record shows that Dr. Andracchio's opinion that Plaintiff has marked limitation maintaining social functioning and a marked limitation maintaining concentration, persistence, and pace is both inconsistent with the balance of his testimony and at odds with the other findings in the record. Accordingly, the Court is persuaded that substantial evidence supports the ALJ's decision to afford some, but not controlling weight to Dr. Andracchio's opinion evidence. Thus, the Court will overrule Plaintiff's third Objection.

### 4. The Magistrate Judge Properly Concluded that Substantial Evidence Supports the ALJ's Determination that Plaintiff's Disability Claim was not Credible

Finally, Plaintiff objects to the Magistrate Judge's determination that substantial evidence supports the ALJ's determination that his disability claim was not credible. (Doc. No. 15 at 3-4.) Once again, however, the Court disagrees with Plaintiff's argument.

In Plaintiff's fourth and final Objection, he takes issue with two of the ALJ's proffered reasons for the credibility determination. (Id.) First, he avers that the ALJ used evidence that his condition improved through counseling and medication to find that his claim was not credible. (Id.) In particular, he contends that the ALJ erroneously determined that a stable condition indicates the lack of a disability. (Id.) Second, Plaintiff claims that the ALJ

incorrectly used evidence that he did not seek emergency room treatment to find that his disability claim was not credible. (Id.)

Plaintiff's arguments are counter to the ALJ's logic. Contrary to Plaintiff's assertions, the ALJ does not contend that a stable condition signals the lack of one; rather, the ALJ highlighted evidence of Plaintiff's improvements and stability to emphasize the contradictions in his own testimony. Similarly, the ALJ's decision does not state that Plaintiff's mere failure to seek treatment at the emergency room lessens his credibility. Instead, the ALJ methodically stressed Plaintiff's failure to seek treatment which stands in stark contrast to his repeated assertions that his impairment was debilitating and severe. For example, the decision notes that Plaintiff gave the following testimony:

> [t]he claimant testified that has been unable to work due to symptoms of depression including suicidal thoughts and difficulty with work pressures as well as crying spells. He stated that he has problems with memory in that he 'can't remember stuff like I used to' and if he goes to his bedroom to get something, he forgets what he went in there for. He stated that he has difficulty maintaining attention and concentration and sometimes has difficulty understanding the plot of a movie. He stated that he sometimes has difficulty getting along with people in that he had trouble getting along with his boss at his last job. The claimant stated that he has been seeing a psychologist for a year and that he takes medications which help somewhat. The claimant further stated that he has panic attacks and lacks energy. He stated that he also has irritable bowel syndrome (IBS) which causes diarrhea and constipation and that he has urinary incontinence but that he is not treated for these issues. He stated that he believes his IBS and urinary problem is worse as a result of his medications.

(R. at 18-19.) But the ALJ then goes on to dispute Plaintiff's testimony, carefully listing objective findings of fact that contradict him. He writes:

> [t]he objective findings of records and the claimant's treatment history do not fully support the degree of limitation the claimant alleges with regard to his mental symptoms. Since being stabilized on medications, the objective findings have shown consistently normal speech, thought process, memory and cognition, orientation, judgment, and insight. While consultative examiner Dr. Werner observed some deficits on memory and concentration testing, this was prior to the claimant beginning medication and at the very beginning of his psychotherapy

treatment…. Additionally, the claimant reported significant improvement in his symptoms once he was stabilized with medication and counseling and any ongoing symptoms revolved largely around difficulty getting along with family members.

(R. at 20-21.) The ALJ thereafter emphasizes Plaintiff's failure to seek treatment, allowing the record to stand in undistorted opposition to Plaintiff's own words. In relevant part, he states:

Further, the only treatment the claimant has received since his alleged onset date has been medication prescribed by his family doctor and later on an outpatient basis at a local clinic and regular outpatient therapy visits. The claimant has not required inpatient or intensive outpatient treatment and has not reported to the emergency room with any exacerbations of his symptoms between outpatient visits since his alleged onset date. Additionally, the record shows a significant gap in treatment between September 2011 and January 2013, although the claimant was informed of inexpensive medications available and there is no evidence that he was unable to obtain inexpensive or free mental health care during that time despite his lack of insurance.

(R. at 21.)

Contrary to Plaintiff's arguments, the ALJ did not make the credibility determination because Plaintiff's condition improved with medication and counseling or because he failed to seek treatment at an emergency room. Rather, the ALJ made the credibility determination based on the evidence in the record which sharply contradicts Plaintiff's testimony. Accordingly, the Court is not persuaded by Plaintiff's arguments and instead finds that substantial evidence supports the ALJ's credibility determination. Therefore, the Court will overrule Plaintiff's fourth Objection.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Objections to the R&R are overruled. The Report and Recommendation (Doc. No. 14) will be approved and adopted in its entirety. An appropriate Order follows.